UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ASHLEY MARIE MILLER, )
 )
    Plaintiff, )
 )
v. )
 )   CV618-072
ANDREW SAUL[1], )
Commissioner of )
Social Security, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Ashley Marie Miller seeks judicial review of the Social Security Administration's denial of her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. The Clerk of Court is **DIRECTED** to update the caption accordingly.

affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II.   ANALYSIS

Miller, who was 33 years old when her SSI and DIB claims were denied, alleges disability beginning on January 18, 2012.  Tr. 10.  She has a high school education, is able to communicate in English, and past job experience as a receptionist.  Tr. 23 & 45.  After a hearing, tr. 40-77, and on remand from the Appeals Council for reconsideration of plaintiff's mental impairments and medical source opinions, *see* tr. 204-08, 292-94, the ALJ issued an unfavorable decision, tr. 10-24.  He found that Miller's diabetes mellitus, type I with neuropathy, carpal tunnel syndrome, depression, generalized anxiety disorder, attention deficit hyperactivity disorder, and sleep apnea constituted severe impairments but did not meet or medically equal a Listing.  Tr. 13-15.  The ALJ thus found that Miller retained the RFC for light work except

> . . . she can push/pull up to 10 pounds occasionally; she can stand//walk up to 4 out of 8 hours, and sit up to 8 out of 8 hours with normal breaks; she needs sit/stand option every hour; she can do no climbing ladders or scaffolds; she can frequently do stooping, kneeling, crouching and crawling; she can frequently do handling, fingering, and feeling; she can occasionally do foot controls; and she should avoid unprotected heights or other hazards.  The claimant is limited to perform simple, routine work in work involving simple,

work-related decisions with few, if any, workplace changes; and she can have occasional interaction with coworkers and supervisors, but no public interaction.

Tr. 15. Plaintiff, he determined, could not perform her past relevant work but could perform the requirements of representative work such as assembler, final parts assembler, and surveillance monitor, all unskilled, sedentary work with an SVP of 2[3]. Tr. 23-25. Miller disagrees, arguing that the ALJ erred in his evaluation of the medical opinion evidence and third-party witness testimony. Docs. 15 & 18.

An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the entire record, 20 C.F.R. §§ 404.1520a (evaluation of mental impairments), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). The RFC represents the most a claimant can do despite her limitations, SSR[4] 96-8p, and it is the

---

[3] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

[4] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are

ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctor's."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a claimant's RFC). And the ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record").

### A. Third-Party Testimony

Plaintiff does not dispute the ALJ's finding that her subjective pain testimony is unsupported by clinical exams, findings, and other relevant

---

plainly erroneous or inconsistent with the Act or regulations").

5

evidence. Tr. 16.[5] For example, she was occasionally noted to be noncompliant with her treatment and diabetic diet, although she was repeatedly discharged from emergency care with explicit instructions to maintain compliance with both. Tr. 16-20. She has a child that she cares for and her self-reported activities of daily living bely total disability. Tr. 20-21. She does, however, argue that the ALJ improperly discredited third-party testimony. Her mother's third-party reports, which the ALJ summarily rejected, merely recapitulated Miller's own reports, and thus are implicitly contradicted by the same evidence of record that discredits Miller. Tr. 22 (noting that plaintiff's mother had submitted a third-party adult functioning report but reiterating that "the objective evidence does not prove disability."); *see* tr. 462-69, 511-18.

The ALJ was not required to repeat his recitation of evidence to

---

[5] She disapproves of the ALJ's emphasis on her ability to work prior to the onset of her mental and physical impairments and her suicide attempt, doc. 15 at 23 & 18 at 10, but does not connect those issues meaningfully to any challenge to the ALJ's credibility finding. As this court has noted before, a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed." *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at * 3 n. 3 (S.D. Ga. Aug. 12, 2015) (citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App's 855, 856 n. 1 (11th Cir. 2013)). To the extent plaintiff may have sought to challenge the ALJ's credibility finding in her sere briefing, however, as discussed *infra*, any error in addressing her work history and suicide attempt were harmless to his ultimate credibility determination. *See Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n. 3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision").

reject identical reports of Miller's functioning on the same basis as her own subjective reports. Indeed, "while the findings in this case could be improved upon, the ALJ clearly rejected [plaintiff]'s subjective testimony regarding the disabling nature of h[er] condition, and, therefore, while the ALJ could have mentioned [her mother]'s statements, [the Court must] conclude that the ALJ's specific and explicit credibility determination as to [plaintiff]'s testimony sufficiently implies a rejection of [her mother]'s testimony as well." *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (internal quotes and cite omitted); *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [plaintiff]'s testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination."), cited in *Carter v. Colvin*, 2017 WL 360926 at *2 (S.D. Ga. Jan. 3, 2017); *see also, East v. Barnhart*, 197 F. App'x 899, 901 n. 3 (11th Cir. 2006) (where the third party adult functioning report "duplicated and corroborated" plaintiff's own testimony, "which the ALJ explicitly found not credible, it is 'obvious' that the ALJ implicitly rejected" the third party's statements as well).

In sum, the ALJ did not err in rejecting Miller's mother's duplicative testimony regarding Miller's functioning.

### B. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in his evaluation of the opinions of treating physicians Glen Dasher and David L. Shuman, psychological evaluator Steve Chester, and psychological consultative examiner Kristiannson Roth. Docs. 15 & 18.

#### 1. *Dr. Dasher*

Treating physician Dr. Dasher provided several statements over the course of a decade of treatment, opining that plaintiff could not work due to uncontrolled Type I diabetes, along with her various other medically determinable and severe impairments. Tr. 21. The ALJ accorded his opinion "little evidentiary weight" because it was "inconsistent with the overall objective evidence and other relevant evidence in the record" of plaintiff's "history of poorly managed diabetes mellitus" and "very minimal treatment since her alleged onset date." *Id*.

Plaintiff disputes both characterizations, contending that her diabetes is, in fact, unmanageable and her treatment history aggressive. Doc. 15 at 10-14. She denies that an uncontrolled diet or lack of

medication compliance is the source of her disabling symptoms. After all, she was hospitalized twice in the two years prior to her alleged onset date, *after* she stopped drinking socially. Tr. 17, 806, 863 (hospitalizations); *see* tr. 858 (reporting drinking once a week in 2012); tr. 1017, 1053, 1182, 1197 (denying drinking since 2012). While Dr. Dasher's April and June 2012 opinions (tr. 876 & 915) may have coincided with her social drinking years, the Court is not convinced by the Government's argument that her prior limited alcohol use that ceased — while her symptoms did not — demonstrates that her diabetes is indeed controlled.[6] Her years without drinking show that she continued to be hospitalized with unpredictable symptoms. The Commissioner's argument that only going to the hospital twice in 26 months proves she is not complaint with her treatment also falls flat. Doc. 17 at 10. Someone actively managing their diabetes would avoid the hospital as best they can; one can easily argue the contrary, in fact, that additional hospitalizations would better

---

[6] The Court has reviewed the ALJ's written decision and the Commissioner's brief in search of more specific instances of uncontrolled diet. The Commissioner points to a single treatment note that plaintiff was "not controlling her diet" in May 2012 to "support[ ] the conclusion that Plaintiff's failure to follow her prescribed diet and monitor her blood sugars was the cause of her April 2012 hospitalization." Doc. 17 at 11 (citing AR 806). That appears to be the only citation provided by the Commissioner to demonstrate plaintiff's dietary noncompliance in a nearly 1,500 page longitudinal record spanning more than a decade of treatment.

demonstrate less active participation in controlling and monitoring her blood sugars.

Moreover, plaintiff argues, her inability to afford qualitatively better or more aggressive treatment is clear in the record and excuses the gaps in her treating record from 2012 to 2017.  Doc. 15 at 11-12.  The Commissioner attempts to manufacture a contradiction, because "plaintiff cannot have it both ways," that she both sought treatment and could not afford more comprehensive treatment.  Doc. 17 at 13.  The Court is unconvinced.  The record contains evidence that plaintiff tried to seek treatment and paid for it however she was able, largely through aid.  *E.g.*, tr. 875 (August 2012 Medicaid self-pay notes that plaintiff has no job and no insurance and thus treats almost exclusively with Dr. Dasher); tr. 706 (Evans Memorial Hospital arranged for financial services to speak with plaintiff about financial help).  The Government contends that plaintiff's reliance on Dr. Dasher for medical treatment should be seen as proof that she does not seek (and, thus, need) more aggressive treatment.  Or, in the face of her inability to pay, it could be seen as a necessity.  *See* tr. 1427-29 (June 2017 emergency room notes that "She calls her PCP and he sends her here, we drop her sugar and discharge.  No one is really managing her

insulin. This is chronic and she has been poorly controlled."). The Court is again unconvinced that plaintiff's extensive medical record[7] is inconsistent with Dr. Dasher's obvious concern that plaintiff's symptoms preclude her from competitive work. Indeed, given the lack of specifically contradictory evidence in the record, the Court is unable to conclude that Dr. Dasher's opinions were properly discredited.

Dr. Dasher's June 2012 (tr. 915) and February 2014 work-accommodation (tr. 897, 899) opinions, to be sure, do not actually offer any real insight into the clinical signs and symptoms supporting his conclusions that she is disabled and will miss five days or more of work. So even if the ALJ erred in discounting them, that error did not affect the outcome of the case. His March 2014 physical capacities evaluation, however, does set out her physical limitations, including that she cannot sit and work for 6 hours of an 8-hour day and that she would need up to a half dozen unscheduled breaks varying between 15 minutes to two hours

---

[7] Plaintiff's treating providers since January 2012 included, nonexhaustively, the Doctors' Hospital of Tattnall for visual difficulties and uncontrolled blood sugar levels, tr. 764-79, Tricare Family Medicine for her diabetes, tr. 806-09, 854-55, 863-65, 916-45, 1093-1178, Evans Memorial Hospital for her diabetes, tr. 817-25, 945-86, 1208-45, 1287-1305, 1417-43, Georgia Eye Institute for her bilateral diabetic macular edema and proliferative diabetic retinopathy, tr. 1016-87, and East Georgia Regional Medical Center for, among other things, elevated blood sugar levels, tr. 1444-62. The record is certainly not sparse, despite the Commissioner's arguments.

at a time throughout a workday, all limitations uncaptured in the RFC assessment. Tr. 903. She would also be unable to frequently handle, finger, or feel throughout a workday, which directly conflicts with the RFC assessment. Tr. 904. The Commissioner must evaluate Dr. Dasher's March 2014 physical limitations on remand to determine whether plaintiff can work.

2.  *Dr. Shuman*

The ALJ discredited Dr. Shuman's opinion that plaintiff cannot work due to her diabetes, stress, depression, and anxiety (*see* tr. 877) as outside his area of expertise and inconsistent with the overall record. Tr. 21. Dr. Shuman, a family medicine specialist, is certainly not an endocrinologist. Doc. 17 at 15 (citing *Beckstedt v. Comm'r of Soc. Sec.*, 2015 WL 235193 at *11 (S.D. Ohio Jan. 16, 2015) & 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5)). But it is not clear what part of his opinion the ALJ thought was outside of his specialization, as he addressed her mental impairments as well as her diabetes. *See* tr. 877. To the extent Dr. Shuman's treating records were not available for review, the ALJ only pointed to Dr. Shuman's inconsistency with the overall record (tr. 21), *not* its lack of support with clinical findings and observations, as a

reason to discredit his opinion. Doc. 17 at 16 (arguing for the first time that the "objective basis for Dr. Shuman's opinion" is "unclear"); *Sprinkel v. Berryhill*, 2017 WL 4172501 at *6 (S.D. Ga. Aug. 28, 2017) ("the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered."). As set forth above, the record contains ample evidence that plaintiff's "diabetes is unstable," as Dr. Shuman states. Tr. 877. Reconsideration on remand is necessary.

    3.   *Drs. Chester, and Roth*

The ALJ finally credited Dr. Roth's and Dr. Chester's opinions insofar as they were consistent with his RFC assessment. Tr. 22. Plaintiff argues that the ALJ's assessment of these opinions was incorrect, but does not address what specific limitations these physicians endorsed would actually conflict with the RFC. Dr. Chester opined that plaintiff was susceptible to "[a]ny increase in environmental stress" and "is best suited for positions that minimize stress/demand, allow flexibility, and allow reduced work hours, time off work for symptoms exacerbation." Tr. 906-08. But those are not concrete mental limitations, and do not explicitly reject an RFC limited to "simple, routine work" "involving

13

simple, work-related decisions with few, if any, workplace changes." *Compare id. with* tr. 15. Nor is it clear that Dr. Roth's conclusion that plaintiff would "likely" have "moderate to marked difficulty with attention and keeping pace" in 2012, which improved to only mild to moderate difficulty in 2012, is inconsistent with the RFC assessment limiting her to simple, routine work. Absent such a showing, it is not clear that even had the ALJ erred in his analysis, it would have changed the outcome of the proceedings. Given that the case is being remanded regardless, however, the Commissioner should also address this opinion evidence to affirm its consistency with the RFC assessment.

### III. CONCLUSION

In conclusion, the ALJ's improperly discredited medical opinion evidence within the record and a remand is warranted to properly incorporate those findings in to the RFC. For the reasons set forth above, this action should be **REMANDED** to the Social Security Administration for further proceedings under 42 U.S.C. § 405(g).

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Therefore, **within 14 days from the date**

**of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 26th day of July, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA